IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DEMARCUS COLE,                          )
                                        )
      Petitioner,                       )
                                        )
v.                                      )          No. 1:17-cv-01075-STA-jay
                                        )
KEVIN MYERS,                            )
                                        )
      Respondent.                       )

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Demarcus Cole has filed, through counsel, a habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the following reasons, the Petition is **DENIED**.

## BACKGROUND

### I.  State Proceedings

In January 2013, a Madison County, Tennessee, grand jury returned an indictment charging Cole with first-degree murder, felony murder, and especially aggravated robbery. (ECF No. 16-1 at 5-8.)  The State subsequently dismissed the first-degree murder charge and proceeded to trial on the remaining counts. (*Id.* at 64.)

At the jury trial, the defendant's girlfriend, Kyneshia Williams, testified that, in the early hours of October 29, 2011, the defendant called her and requested that she call the victim,

Demetrius Cole, to set-up a meeting to purchase cocaine in order to rob him. *State v. Cole*, No. W2013-02850-CCA-R3-CD, 2014 WL 7269813, at *5 (Tenn. Crim. App. Dec. 22, 2014), *perm. appeal denied* (Tenn. May 18, 2015). When Williams refused to participate in the scheme, the defendant told her that he would make other plans. *Id.* "The following Sunday, the defendant showed up at her house" and "told her that the victim had been shot five times with a hollow point .32 caliber weapon—twice in the head, once in the arm, once in the chest, and once somewhere else—and that he was dead." *Id.* Williams further testified that the defendant stored two firearms at his house, one of which was a .32 caliber pistol. *Id.*

Ebony Jenkins testified that she "spent the evening of October 28–29 at the defendant's apartment and was present when the victim was shot." *Id.* at *1. She said "[t]he victim arrived at [the apartment at] about 10:00 p.m., and the three of them drank beer and smoked marijuana together." *Id.* She explained that, in the early morning hours, two men, whom she had seen outside with the defendant, came into the apartment. *Id.* Soon after, one of the men said "'This is a f* * *ing robbery' as he pulled a gun on the victim." *Id.* "One of the men ordered [Jenkins] to put blankets over her head, and she complied." *Id.* While "her head [was] covered, she heard 'a commotion' and one of the two men yelling to the victim, 'Give me everything in your pockets. I want your money, your cellphone, your wallet, anything that you have in your pockets.'" *Id.* After hearing "the defendant and the second man . . . leave," she heard "the sounds of further struggle between" the remaining individual and the victim. *Id.* She then heard "two gunshots, followed by three more gunshots." *Id.* When the perpetrator left the apartment, "she removed the blankets from her head to find the victim lying on the floor covered in blood." *Id.* She then called 9-1-1. *Id.*

The medical examiner testified that he "performed the autopsy of the victim's body," and determined that the "cause of death was multiple gunshot wounds." *Id.* at *2. Special Agent Alex Brodhag testified that the victim was shot with a .32 caliber pistol. (ECF No. 16-4 at 130.)

Sergeant Chestnut, an officer from the Jackson Police Department, testified that, on the morning of the shooting, the defendant agreed to meet with him at the police station. *Cole*, 2014 WL 7269813, at *3. While there, Cole gave a statement in which he insisted "that he was a robbery victim and had been forced at gunpoint to drive the perpetrators from the scene." *Id.* The witness further related that "[t]he defendant . . . had his cell phone . . . in his pocket[]" and agreed to allow the officer to look at the device. *Id.* at *4. Chestnut discovered that "[a]ll incoming and outgoing calls, as well as any text messages, had been deleted from the defendant's phone[.]" *Id.* The defendant gave the officer several explanations for the deletions, including "that the perpetrators must have done it." *Id.*

Sergeant Chestnut explained that he had another meeting with the defendant "on November 2 in the parking lot of the Family Dollar store in Henderson." *Id.* When the officer asked Cole "if he owned any firearms, . . . the defendant 'was very adamant that he never owned or possessed any firearms.'" *Id.* "A couple of weeks later, however, the defendant informed Sergeant Chestnut that he had gone home . . . and realized that he was missing two firearms from his apartment." *Id.* Cole "provided no explanation for why he had gone home to look for weapons that he allegedly had forgotten he owned." *Id.* Chestnut identified for the jury photographs of the defendant's apartment "that had been taken by the defendant's phone," showing "a small caliber weapon consistent with a .22, .25, or a .32, and a medium to large caliber semiautomatic firearm." *Id.* According to the officer, "during the investigation, he never released information about where the victim had been shot or what caliber weapon had been used." *Id.*

3

LeGraine Poston testified that he spoke with the defendant while the two were being held at the Madison County Jail.  *Id.* at *5.  "According to [the witness], the defendant said that he had set the victim up for a robbery because he wanted to 'get high,' that all that was supposed to happen was a robbery but that things had not gone according to plan, and that he did not want to take the blame for something that someone else had done."  *Id.*

An analyst with the local planning department "testified that he had . . . prepared a map of the city showing various cell phone calls with their times and the cell phone towers that had transmitted the calls."  *Id.*  An investigator from AT & T testified that he "us[ed] the [defendant's] cell phone records and the [analyst's] map" to determine that, in the hours after the shooting, "the defendant was moving from one location in the city to another during that time and that he never called 9–11 or law enforcement."  *Id.*

"The defendant elected not to testify and rested his case without presenting any witnesses."  *Id.*  The jury convicted Cole of first-degree felony murder and especially aggravated robbery, and he was sentenced to "consecutive terms of life and twenty years[]"  *Id.* at *1.  He took an unsuccessful direct appeal, in which he challenged the sufficiency of the evidence.  *Id.*  The Tennessee Supreme Court denied discretionary review.  (ECF No. 16-12.)

Cole subsequently filed a state *pro se* post-conviction petition (ECF No. 16-13 at 3-8), as well as two amendments to the petition (*id.* at 28-29, 31-32).  Petitioner's appointed counsel filed two additional amendments.  (*Id.* at 41-46.)  After an evidentiary hearing, the post-conviction trial judge denied relief from the bench and in a written order.  (*Id.* at 50-52; ECF No. 16-15 at 69-79.)  On appeal, the Tennessee Court of Criminal Appeals affirmed the lower court's decision and the Tennessee Supreme Court denied permission to appeal.  *Cole v. State*, No. W2015-01901-CCA-

R3-PC, 2016 WL 2859196, at *1 (Tenn. Crim. App. May 11, 2016), *perm. appeal denied* (Tenn. Sept. 26, 2016).

## II.  Federal Habeas Petition

Cole filed his Petition on April 19, 2017.  (ECF No. 1.)  He asserts in Claim 1 that trial counsel rendered ineffective assistance by failing to file a motion to suppress photos and information gathered from his cell phone (Claim 1A), "to object and request a mistrial due to improper references by the prosecutor during closing argument" (Claim 1B), and to explain to him the prosecution's "legal theory of 'Criminal Responsibility for the Actions of Another'" (Claim 1C).  (ECF No. 1 at 6.)  In Claim 2, Petitioner maintains that his right "to protection from warrantless searches by the government as provided in the Fourth Amendment to the United States Constitution" was violated when his cellular phone was examined by Jackson police officers.  (*Id.* at 8.)  He asserts in Claim 3 that his "right against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution was violated by the government's reference to [his] failure to testify."  (*Id.* at 9.)

Respondent Kevin Myers[1] filed the state-court record and a Response to the Petition.  (ECF No. 16; ECF No. 17.)  He argues that Claim 1A is without merit and the remaining claims are procedurally defaulted.  Petitioner filed a reply, insisting that he is entitled to relief on all claims. (ECF No. 20.)

---

[1]  The Clerk of Court is **DIRECTED** to substitute Kevin Myers for Kevin Genovese as Respondent.  *See* Fed. R. Civ. P. 25(d).

## DISCUSSION

Upon review of the state court record and the parties' submissions, the Court determines that Respondent's arguments are well-taken.[2]

## I.  Legal Standards

### A.  Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application

---

[2]  Because the assertions of ineffective assistance in Claims 1A and 1B relate, respectively, to the trial errors alleged in Claims 2 and 3, the Court addresses the claims by subject matter, rather than in strict numerical order.

of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case."  *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary.  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).  A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).  To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848.  A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits.  *Harris v.*

*Booker*, 251 F. App'x 319, 322 (6th Cir. 2007).  Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).  To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted.  *Id.* at 750.  The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).  A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B.  Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

8

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.   Motion to Suppress: Claims 1A and 2

Petitioner asserts in Claim 2 that the information taken from his cell phone, which included text and phone records and the photographs depicting firearms in his apartment, were improperly submitted to the jury because he did not consent to the search of the phone.  (ECF No. 1 at 8; ECF No. 20 at 3.)  He concedes that he agreed to a search of the phone the first time he spoke with Sergeant Chestnut, but he complains that he did not consent to a second search when the phone was taken from him during his detention on an unrelated crime.  (ECF No. 20 at 3.)  In Claim 1A, he maintains that trial counsel should have filed a motion to suppress the information gathered during the second search.  (ECF No. 1 at 6.)  Respondent argues that Claim 2 is procedurally defaulted and Claim 1A is without merit.  (ECF No. 17 at 17-21, 23-24.)  The Court agrees.

Cole did not argue prior to trial that the second search of his phone was done without his consent, and the time for raising that issue in the state courts has passed.  *See* Tenn. Code Ann. § 40–30–106(g)) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]").  He asserts, however, that counsel's ineffective assistance in failing to file a motion to suppress the photographs is cause to excuse the procedural default.  He insists that the TCCA's decision rejecting the ineffective assistance claim is unreasonable because, while the appellate court addressed his argument that counsel should have moved to suppress the text and call information retrieved from his phone, it did not address his additional contention that counsel rendered ineffective assistance by failing to seek suppression of the photographs.  (ECF No. 20 at 5.)  The argument is unfounded.

In his post-conviction appellate brief, Cole argued that counsel was ineffective by failing to file a motion to suppress "pictures . . . of weapons which were alleged to be the murder weapon[s] . . . and call and text records [used] to create maps which were then entered into evidence and used to purportedly establish Mr. Cole's physical location in the hours and days following the robbery and homicide." (ECF No. 16-16 at 13 (first alteration in original).) In rejecting the argument, the TCCA identified *Strickland*'s standards and applied them to the evidence adduced at trial and the post-conviction hearing. *Cole*, 2016 WL 2859196, at *8-10. The court correctly summed-up Petitioner's argument as presenting a challenge to counsel's failure to seek suppression of the texts and call information, as well as suppression of the photographs:

> The petitioner contends that the post-conviction court's ruling "misapprehends the evidence." He concedes that Sergeant Chestnut obtained his phone by consent on the first occasion but maintains that there was no consent on the second occasion, which occurred when he was in custody on unrelated charges several weeks later. According to the petitioner, his phone was removed from the property room and given to Sergeant Chestnut, who then performed a forensic evaluation of his phone. The petitioner maintained that Sergeant Chestnut recovered pictures of "weapons which were alleged to be the murder weapon[s]" and utilized call and text records to create maps to establish his location "in the hours and days following the robbery and homicide." The petitioner maintains that he did not consent to the second search of his phone.

*Id.* at *10. !

The TCCA declined to decide whether counsel performed deficiently by failing to suppress the photographs and the phone records.[3] *Id.* Instead, the court determined that Cole was not prejudiced by his attorney's conduct:

> Regardless of whether counsel should have filed a motion to suppress the search of the petitioner's cell phone, we cannot conclude that there is any reasonable probability that the result of the proceeding would have been different had a motion to suppress been filed and granted. The bulk of the incriminating evidence against

---

[3] Pursuant to *Strickland*'s teachings, the TCCA did not "need [to] determine whether counsel's performance was deficient before [it] examin[ed] the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

the petitioner came in the form of witness testimony from Kyneshia Williams, Ebony Jenkins, and LeGraine Poston, as well as the petitioner's evasiveness with the police. Moreover, as we will discuss in the section below, the call and text records that were used to create maps of the petitioner's location were recovered from the petitioner's cell phone service provider, not the phone, and were, thus, appropriate evidence. Any minimal information gleaned from the petitioner's phone was auxiliary.

!

*Id.*

Contrary to Petitioner's assertion, nothing in the TCCA's discussion suggests that its determination was based on its assessment of the prejudicial effect of the call and text information alone. [4] Moreover, the fact that the court went on to *also* determine that the maps and locations of Petitioner's whereabouts were not derived from the call and text information taken from the phone does not suggest that the court overlooked the prejudicial effect of the photographs.

Even if Petitioner meant to argue that the entirety of the TCCA's prejudice determination is unreasonable, the ineffective assistance claim would still be without merit. As the appellate court noted, the jury heard other, highly incriminating evidence of Petitioner's guilt besides the evidence obtained from the phone, including: the testimony of Cole's girlfriend that he attempted to involve her in a scheme to rob the victim and, when she refused to participate, told her that he would make another plan; the testimony of a fellow jail detainee that Petitioner confessed to planning the robbery; and Ebony Jenkins's testimony regarding the events that unfolded in Petitioner's apartment which suggested that the defendant brought the two unidentified men to his home to rob the victim. Notably, too, the jury was presented with other evidence, besides the photographs, that the defendant owned firearms, including a .32 caliber pistol. *See Cole*, 2014 WL

---

[4] Petitioner does not argue that the TCCA's decision was contrary to clearly established Supreme Court law. A challenge on that ground would be without merit because the court identified and applied *Strickland*'s standards. *See Williams*, 529 U.S. at 406 ("A run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

726813, at *5. (Williams's testimony that Cole owned a .32 caliber pistol); (ECF No. 16-5 at 47-48) (Sergeant Chestnut's testimony that Petitioner admitted to him that he owned firearms and stored them in his apartment).)   Given this body of inculpatory evidence, the TCCA did not unreasonably conclude that counsel's failure to file a motion to suppress the contents of the phone did not prejudice Cole.

Because the TCCA's determination that counsel was not ineffective in failing to file a suppression motion was not unreasonable, Claim 1A is without merit and is **DENIED**.  Claim 2 is **DISMISSED** as Petitioner has not established counsel's ineffectiveness as cause to excuse the procedural default of that claim.

### III.   Criminal Responsibility: Claim 1C

Petitioner asserts that trial counsel rendered ineffective assistance by failing to explain to him "the legal theory of 'Criminal Responsibility for the Actions of Another' that would be used against him." (ECF No. 1 at 6.)  He alleges, specifically, that counsel did not tell him that he could be convicted of the crimes without the two other perpetrators having been charged.  Respondent argues that the claim is procedurally defaulted.  In his Reply, Petitioner concedes that he did not exhaust the claim, but he asserts that post-conviction counsel's failure to raise the issue is cause, pursuant to *Martinez*, to excuse the procedural default.[5]

To establish cause to excuse a default at the initial post-conviction stage, a petitioner must show that his post-conviction counsel "was ineffective under the standards of *Strickland*[.]" *Martinez*, 566 U.S. at 14.  He must therefore prove that post-conviction counsel performed

---

[5]   The issue raised by Claim 1C is not the same issue presented to the TCCA.  On appeal from the denial of post-conviction relief, Petitioner asserted that counsel was ineffective for failing to argue that he could not be convicted on a theory of criminal responsibility because "no principal actor was ever charged or convicted of the offense."  *Cole*, 2016 WL 2859196, at *6.

deficiently and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the [post-conviction] proceeding would have been different." *Strickland*, 466 U.S. at 694. A petitioner must also establish that the "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

Cole essentially argues that his testimony at the post-conviction hearing demonstrates that his claim is substantial. He posits that "it is apparent" from his testimony "that he critically lacked the necessary understanding of the legal theory of "Criminal Responsibility for the Actions of Another,'" and suggests that his misapprehension of the law was the result of counsel's failure to properly advise him about the State's theory of criminal responsibility. (ECF No. 20 at 14.) The post-conviction testimony on which he relies consists of his explanation for his belief that he should not have been convicted on a theory of criminal responsibility without the State having also charged and convicted the principal offenders. Specifically, he testified at the post-conviction hearing that the Tennessee Supreme Court "held in State versus Farren that one can't be convicted pursuant to the theory of criminal responsibility if there's no other person guilty of the crime as the principal."[6] (ECF No. 16-15 at 36.) He conceded on cross-examination that he was "familiar" with the statute, Tenn. Code Ann. § 39-11-407, which provides that "it is no defense that . . . [t]he person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of

---

[6] The case to which he referred is most likely *State v. Farner*, 66 S.W.3d 188 (Tenn. 2001). As the TCCA noted in Petitioner's post-conviction appeal, "the *Farner* opinion does not stand for the proposition that the principal offender must be known, only that there must be one." *Cole*, 2016 WL 2859196, at *9.

offense, or is immune from prosecution." (*Id.* at 42-43.)  He insisted, however, that "one can't be convicted . . . if there's no other person." (*Id.* at 43.)

The testimony does not suggest that the ineffective assistance claim is substantial. Specifically, Petitioner's remarks do not show that, at the time of trial, counsel failed to advise him about the applicable law regarding criminal responsibility, but only suggests that, having conducted legal research in preparation for his post-conviction proceedings, Petitioner misapprehended the import of the case law and the statute.  Indeed, it may even be a mistake to perceive in his testimony a basic ignorance of the law.  A review of his *pro se* post-conviction appellate brief reveals that his understanding of the legal landscape was somewhat sophisticated. Asserting that "*every* published opinion of the Tennessee . . . Criminal Court and the Tennessee Supreme Court that addressed this defense . . . involved cases in which there was a known principal offender," he posited that, consequently, the statute "presumes *the existence* of a party or parties other than a defendant convicted as being criminally responsible for the actions of another." (ECF No. 16-16 at 8-9 (italics in original; bolding omitted).)  (*Id.* at 9.)  He argued that he therefore could not be convicted under the theory of criminal responsibility because the identities of the principal offenders were unknown.  (*Id.*)  That is the same argument he expressed during his post-conviction testimony.

Accordingly, because Petitioner's testimony does not show that the ineffective assistance claim is substantial, the procedural default is unexcused.  Claim 1C is **DISMISSED**.

## IV.   Prosecutor's Statements: Claims 1B and 3

The Fifth Amendment's privilege against coerced self-incrimination forbids a prosecutor from commenting on a defendant's decision not to testify on his own behalf.[7] *Griffin v. California*, 380 U.S. 609, 615 (1965).  In Claim 3, Petitioner asserts that his "right against self[-]incrimination as guaranteed by the Fifth Amendment to the United States Constitution was violated by the government's reference to [his] failure to testify."  (ECF No. 1 at 9.)  He argues that the following statements made by the prosecutor during closing argument, as shown in italics, "suggested to the jury [that] Cole could have testified, even though the Prosecutor was aware that Cole had an absolute right not to testify":

> You can't do bad in this world and get by.  *You can't lie.  You can't lie.*  You can't do those things and get by.  Now, the Defendant, either he never had anybody tell him, or if they told him that, he didn't listen, didn't listen.  *He can get up here and he can suggest and Mr. Sparks can tell you he's not a party to this and maybe he's sorry for this, I don't know, but sorry is no consolation[.]*"

(ECF No. 20 at 10 (emphasis supplied by Petitioner).)

Cole maintains in Claim 1B that counsel was ineffective by failing to object to the statements on the grounds that they violated his privilege against self-incrimination and deprived him of a fair trial because they constituted improper accusations that he had lied.[8]  (ECF No. 1 at 6.)  Respondent argues that Petitioner procedurally defaulted both the Fifth Amendment claim and the ineffective assistance claim.  (ECF No. 17 at 22-23, 24-25.)  In his Reply, Petitioner concedes

---

[7]   The Fifth Amendment right against self-crimination is made applicable to "the States by reason of the Fourteenth Amendment."  *Griffin*, 380 U.S. at 615.

[8]   A prosecutor engages in misconduct when his remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974).

that he never objected to the prosecutor's comments at the time of trial or on direct appeal. (ECF No. 20 at 8.) He also admits that he litigated the ineffective-assistance issue in the post-conviction trial court but failed to present the claim to the TCCA. (*Id.* at 10.) He argues, however, that "the exhaustion rule need not apply" where the "constitutional issue is sufficiently grave[.]" (*Id.*) The argument is unavailing.

"[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Where the independent claim "itself [has been] procedurally defaulted[,] . . . that procedural default may . . . be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (emphasis in original).

Petitioner's independent claim of attorney ineffective assistance, as set forth in Claim 1B, cannot be used as cause to excuse his procedural default of Claim 3. Cole did not present Claim 1B to the TCCA, and he has failed to show cause and prejudice to excuse the procedural default. To demonstrate cause, he would have to point to "some objective factor external to the defense" that prevented him from raising the issue on appeal from the denial of post-conviction relief. *Murray*, 477 U.S. at 488. He has offered no reason why he did not present the ineffective assistance claim to the TCCA.

What is more, the gravity of the alleged violations of Cole's privilege against self-incrimination and right to due process does not entitle him to a finding of prejudice. The Sixth Circuit has held that, "regardless of the nature of the underlying constitutional claim," a petitioner meets the prejudice prong of the cause-and-prejudice standard only by "show[ing] that he was *actually* prejudiced[.]" *Ambrose v. Booker*, 684 F.3d 638, 651 (6th Cir. 2012) (emphasis added).

17

"The 'most important aspect to the [actual prejudice] inquiry is the strength of the case against the defendant' and whether a trial without errors would still have resulted in *conviction*." *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (emphasis in original) (quoting *Ambrose,* 684 F.3d at 652). The evidence of Cole's guilt, as discussed *supra*, was substantial, such that a trial without the prosecutor's isolated comments or with counsel's objection would still have resulted in a conviction.

Because the procedural default of Claim 1B and, by extension, the default of Claim 3, are not excused, the claims are not properly before the Court. Claims 1B and 3 are **DISMISSED**.

For these reasons, the Petition is **DENIED**.

**APPEAL ISSUES**

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[9]

**IT IS SO ORDERED**.

> **s/ S. Thomas Anderson**
> S. THOMAS ANDERSON
> CHIEF UNITED STATES DISTRICT JUDGE
>
> Date: April 27, 2020.

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.